UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| SHAKIRA MCARTHUR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FRESHPOINT NORTH CAROLINA, INC. )<br>)<br>)<br>Defendant. )<br>) | **COMPLAINT**<br><br>Civil Action No.: 5:20-cv-645<br>Jury Trial Demanded |

NOW COMES PLAINTIFF, SHAKIRA MCARTHUR, by and through undersigned counsel, and complains against Defendant FreshPoint North Carolina, Inc. as follows:

### INTRODUCTION AND NATURE OF THE CASE

Plaintiff brings this action against Defendant for its violations of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 for unlawful employment practices on the basis of the protected class of sex, including (1) sexual harassment, (2) hostile work environment, (3) retaliation, and (4) constructive discharge. Plaintiff seeks all available remedies including but not limited to, compensatory and punitive damages pursuant to 42 U.S.C. § 2000e-5(f)-(k) and 42 U.S.C. § 1981a or otherwise permitted by law.

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claim for relief asserted herein arises under federal law, and under 28 U.S.C. § 1343(a)(4), as the claims herein seek relief under acts of Congress providing for the protection of civil rights.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant is a resident of this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

3. Plaintiff Shakira McArthur ("Ms. McArthur") is a citizen and resident of Harnett County, North Carolina.

4. Defendant FreshPoint North Carolina, Inc. ("Defendant"), is a foreign corporation organized and existing under the laws of the State of Tennessee with its principal office located at 740 Massman Drive, Suite 306, Nashville, Tennessee 37210. Defendant is authorized to do business in the State of North Carolina and maintained its registered office in Wake County, North Carolina. At all times relevant hereto, Defendant has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. Ms. McArthur signed and filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 18, 2019, alleging violations of Title VII.

7. Ms. McArthur received her Notice of Right to Sue from the EEOC on August 31, 2020.

8. Ms. McArthur complied with all deadlines relating to the investigation of her formal administrative complaint.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

10. Ms. McArthur began working for Defendant as a Night Selector in Defendant's warehouse in July 2018. Ms. McArthur worked for Defendant until she had no choice but to resign in September 2019, due to the acts and inactions of Defendant related to her continued complaints of workplace discrimination and harassment.

11. As a Night Selector, Ms. McArthur's work involved moving heavy pallets of food on a pallet jack, scanning the products to be loaded, wrapping pallets, and loading the wrapped pallets onto trucks. By all accounts, Ms. McArthur excelled at her job, was known for a high pallet count, and had received two (2) performance-based bonuses. Ms. McArthur was pleased to be able to support her family with well-paying and steady work.

12. Defendant grouped its employees into teams who worked together to fulfill orders. Ms. McArthur trained most of the members on her team which consisted of only males and herself.

13. In August 2019, Ms. McArthur's male team members began to harass Ms. McArthur relentlessly because she was a woman. In particular, her coworkers stared at her, pointed at her, looked at her and laughed, mimicked her voice, mocked her, and yelled "yeehaw," barked, sang songs with sexual innuendos, and/or whispered and laugh between themselves when she walked by. At least two of her male team members engaged in this behavior, including Jarmontay (last name unknown) and Julian McCormick.

14. On one occasion, Jarmontay and Julian learned that Ms. McArthur was suffering from cramps due to menstruation. The three male coworkers proceeded to call out to her, saying "what's good, Bloody," and engaged in "cat calling" such as playing songs of a sexual nature while she was working.

15. Ms. McArthur complained about Jarmontay and Julian's harassment to her supervisor, Darren Leonard. Mr. Leonard recommended and encouraged her to confront and talk to Jarmontay and Julian and ask them to stop the harassment. Ms. McArthur did as her supervisor suggested but it did nothing to stop Jarmontay and Julian from continuing to harass her.

16. Ms. McArthur complained to Lauren Matthis, an employee of Defendant's Human Resources Department. After speaking with Ms. Matthis, Ms. McArthur returned to work and immediately overheard Jarmontay talking about her, saying "if she wants to start it, I will finish it!" A couple of hours later, Ms. McArthur saw Jarmontay speaking with another coworker who asked Jarmontay to repeat what he said. Jarmontay told him to "hold on" and proceed to watch Ms. McArthur until she was out of sight. For the remainder of the afternoon, the male coworkers on her team members watched her and laughed together.

17. Later that same afternoon, Ms. McArthur also complained to Defendant's Vice President, David (last name unknown). When she complained to Defendant's Vice President, she was so upset that he sent her home. Ms. Matthis told Ms. McArthur to stay home for the next several days so that an investigation could be conducted.

18. When Ms. McArthur returned to work, she received no information, orally or in writing, that an investigation had been conducted. Instead, Ms. Matthis required her to meet face to face with her harassers to inform her that Jarmontay and Julian had all denied her allegations of harassment, only stating that Ms. McArthur was "nosey." Ms. Matthis suggested to Ms. McArthur that Jarmontay may have been referring to a gang when he called her "Bloody."

19. Ms. Matthis promised Ms. McArthur that she would further investigate but she did not.

20. When Ms. McArthur returned from leave, she was reassigned to work as a Dock Worker, rather than a Night Selector. As a Dock Worker, Ms. McArthur still worked nightshift with her fellow team members, including her harassers at the same base salary, however, she no longer had the ability to earn performance-based bonuses.

21. Ms. McArthur was also told that she could interview for a position in Defendant's Customer Service Department, but she was not guaranteed to be selected for the position. She was temporarily permitted to "shadow" another employee in that department and did considered the customer service position in light of the continued harassment but the pay was less than that of her current position so she could not accept the position if it was offered to her.

22. Defendant did not cite or otherwise discipline Jarmontay or Julian for their harassment of Ms. McArthur, and as a result the harassment escalated. Just four (4) days after the meeting with Ms. Matthis, the harassing coworkers barked at her, laughed and whispered when she walked by, and left pallets of food blocking her path to the ramp that she used to load the truck she was assigned to stock.

23. Ms. McArthur immediately complained to Mr. Leonard about the pallets being left in her way. Jarmontay saw Ms. McArthur speaking with Mr. Leonard and continued to smirk, stare at her and yell "yeehaw" when he drove his pallet jack by her. Mr. Leonard did nothing in response to Ms. McArthur's complaints.

24. Ms. McArthur was obviously upset by the continued harassment, so she took a break and walked outside to gather her composure. When she returned, Kyle, another supervisor, asked where she had been. She told Kyle about the harassment, to which he responded by yelling at Ms. McArthur and telling her to "GO HOME." Ms. McArthur tried to explain to Kyle that she

5

wanted to work but he told her that she needed "to learn how to ignore these guys" and that he "didn't have time for this!" Ms. McArthur clocked out and went home as instructed.

25. The following morning, Ms. McArthur sent Ms. Matthis a detailed email about the previous night's events and asked to meet with Ms. Matthis. Ms. Matthis denied her request for a meeting.

26. Several days later, Ms. McArthur was called into a meeting with Defendant's president, Defendant's vice president, Julian and Jarmontay to discuss her continued complaints of harassment. During the meeting, Jarmontay acted as if he was amused by the situation—He smirked and laughed while Ms. McArthur spoke. When Ms. McArthur mentioned the barking, Jarmontay stated, "other people have barked about you, but they aren't getting reported."

27. At the end of the meeting, Defendant's president told Ms. McArthur to watch what she said in front of her team members, referencing how she had been called "Bloody" after her harassers learned that she had been cramping several weeks prior.

28. Again, the harassment does not stop. Just days after the meeting with Defendant's president and vice president, Jarmontay again yelled out "yeehaw," barked at Ms. McArthur when he saw her, and smirked at her. Further, Jarmontay refused to load the pallets that Ms. McArthur wrapped for him and then falsely reported to Mr. Leonard that Ms. McArthur refused to wrap any of his pallets. While Ms. McArthur showed Mr. Leonard all the pallets that she had wrapped for Jarmontay, he rode by Ms. McArthur smirking and singing "I'm a Barbie girl in a Barbie world."

29. Later that afternoon, Defendant's vice president spoke with Ms. McArthur about Jarmontay' allegation that she was not wrapping his pallets. She explained that Jarmontay had lied and that she had shown Mr. Leonard all the wrapped pallets. Defendant's vice president stated, "I need him as a selector, so the middle school drama needs to stop!"

30. After speaking with Defendant's vice president, Ms. McArthur returned to find the loading dock that she had just swept covered with tomatoes that Jarmontay had smashed on the floor. Ms. McArthur was left to clean up his mess.

31. Prior to the end of their shift, Ms. McArthur spoke with a team member who confirmed that Jarmontay continued to talk and make jokes about her with the rest of their male team members.

32. The next day, Jarmontay proceeded to get unusually and unnervingly close to Ms. McArthur while she tried to work which made her very uncomfortable. Jarmontay and other male team members continued to watch her and laugh.

33. Because the relentless harassment had not stopped, Ms. McArthur complained to her employer yet again. At that point, Ms. McArthur was required to meet again with her harassers.

34. Left with no choice but to be forced to meet with coworkers who subjected her to a hostile environment, Ms. McArthur was compelled to leave the company on September 10, 2020.

**FIRST CLAIM FOR RELIEF**
**Hostile Work Environment in Violation of Title VII**
**of the Civil Rights Act of 1964, 42 U.S.C. § 2000e** *et seq.*

35. Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

36. Ms. McArthur was subjected to continuous unwelcome harassment by her coworker harasser on an almost daily basis.

37. Defendant's employees harassed Ms. McArthur by, including to but not limited to:

   a) Calling her "Bloody;"

   b) Barking at her;

   c) Yelling "yeehaw" when they passed by her;

7

      d) Singing songs with sexual innuendos to her;

      e) Staring, laughing, mocking and/or mimicking her virtually every time she was in their presence; and

      f) In other ways to be determined through discovery.

38. The harassment that Ms. McArthur endured was unwelcome and she took actions to try and stop it—She complained to Defendant's management and officers numerous times regarding the daily harassment she was subjected to, including but not limited to her immediate supervisor, human resources, and Defendant's president and vice-president. Additionally, Ms. McArthur confronted her harassers and asked them to stop the harassment.

39. Said unwelcome harassment was sufficiently severe or pervasive that it altered the conditions of Ms. McArthur's employment and created an abusive work environment, subjectively for Ms. McArthur in that 1) she complained to her supervisor, human resources, the vice president and president several times; 2) she had to leave work on more than one occasion because she was so upset by the harassment; and 3) she ultimately resigned from her employment specifically because she simply could not take the harassment at work any longer.

40. Said unwelcome harassment was objectively sufficiently severe or pervasive in that a reasonable person could conclude so based on the frequency of the Defendant's employees' unwelcome harassment, its severity, and its humiliating impact upon Ms. McArthur as well as its unreasonable interference with her work performance including, but not limited to:

      a) The frequency and severity of the "barking," "catcalling," name-calling "Bloody," playing of sexual songs and whispering and pointing at Ms. McArthur, occurred on virtually a daily basis;

      b) Ms. McArthur had to leave work on more than one occasion due to her becoming upset as a result of the harassment;

    c) The numerous complaints by Ms. McArthur to Defendant's management and officers that yielded no results but only served to make the harassment nothing if not worse;

    d) As a result of her complaints, Defendant "demoted" Ms. McArthur to Dock Worker in which, incredulously, she still worked in the vicinity of her harassers, but she was no longer eligible to receive performance-based bonuses;

41. Defendant is liable for the harassment that Ms. McArthur endured at the hands of her coworker harassers because Defendant had actual knowledge of the harassment and <u>failed to take any remedial action</u>. Ms. McArthur complained directly to Defendant's vice president and later had a meeting with Defendant's president and vice-president regarding the continued harassment.

42. In addition, Defendant's management and senior officials perpetuated the harassment by, including but not limited to:

    a) forcing Ms. McArthur to continuously meet with her harassing coworkers;

    b) Defendant's vice president instructing Ms. McArthur to "stop the middle school drama" because "I need him as a selector;"

    c) Defendant's Human Resource Manager suggesting to Ms. McArthur that Jarmontay may have been referring to a gang when he called her "Bloody;" and

    d) Defendant's vice president instructing Ms. McArthur to "watch what you say to the other team members" so as not to instigate their "joking."

43. From August 2019 through September 2019, Defendant engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1). Specifically, Defendant subjected Ms. McArthur to hostile work environment based on her sex.

44. The unlawful employment discrimination complained of hereinabove was intentional because Defendant acted maliciously and with reckless indifference to Ms. McArthur's federally protected rights by refusing to take any remedial action to stop the harassment and by perpetuating the hostile work environment by forcing Ms. McArthur to continue to work with the

harassing coworkers and suggesting that she censor herself so as not to provoke ridicule from her harassing male coworkers as Defendant valued the male selectors over her.

45. As a direct and proximate result of Defendant's violations of Title VII as described herein, Ms. McArthur has suffered and continues to suffer damages, including emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

46. As a result of all of Defendant's acts and omissions as set forth herein, Defendant is liable to Ms. McArthur for all damages and remedies available under the law to her including, but not limited to, front pay, back pay, compensatory damages, punitive damages, costs, attorneys' fees, etc.

**SECOND CLAIM FOR RELIEF**
**Constructive Discharge in Violation of Title VII**
**of the Civil Rights Act of 1964, 42 U.S.C. § 2000e** *et seq.*

47. Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

48. Defendant deliberately made Ms. McArthur's working conditions intolerable with the intent that Ms. McArthur would have no choice but to resign her employment with Defendant.

49. Ms. McArthur repeatedly complained to Defendant's management and officers about her coworkers' continuing to sexually harass her. Defendant allegedly investigated Ms. McArthur's allegations, but any purported investigation amounted to a mere farce. Defendant also continuously forced Ms. McArthur to engage in face-to-face meetings with her coworker-harassers. None of the meetings resulted in any resolution or reduction in the unwelcome harassment. Instead, the meetings invigorated her coworker harasser's given that neither of them was warned, reprimanded, or disciplined for any of their misconduct.

50. Instead, Defendant's management and officers singled out Ms. McArthur and suggested she was the source of any problem between her and her coworker harassers. Defendant's Vice President instructed Ms. McArthur to "stop the middle school drama" because "I need [Jarmontay] as a selector." Defendant's Human Resource Manager indicated to Ms. McArthur that Jarmontay may have been referring to a gang when he called her "Bloody," and Defendant's Vice President instructed Ms. McArthur to "watch what you say to the other team members" so as not to instigate their "joking."

51. In addition, Defendant's solution to Ms. McArthur's complaints of sexual harassment was to demote her to a Dock Worker. In this position, Ms. McArthur no longer had the opportunity to earn performance-based bonuses. Ms. McArthur was still forced to work during her shifts with her coworker harassers, so Defendant did not remove her from the hostile work environment by demoting her.

52. Given that Ms. McArthur had complained numerous times to Defendant's management and officers about being sexually harassed by her coworkers on an ongoing basis, Defendant did nothing in response to her complaints other than force her to meet with her harassers and demote her to a position in which she still worked with her harassers, a reasonable person in Ms. McArthur's position could conclude that she had no choice but to resign.

53. As a result of all of Defendant's acts and omissions as set forth herein, Ms. McArthur's resignation was a reasonably foreseeable consequence of Defendant's conduct.

54. As a direct and proximate result of Defendant's violations of Title VII as described herein, Ms. McArthur has suffered and continues to suffer damages, including emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

11

55. As a result of all of Defendant's acts and omissions as set forth herein, Ms. McArthur's resignation resulted in a constructive discharge by Defendant such that Defendant is liable to Ms. McArthur for all damages and remedies available under the law to her including, but not limited to, front pay, back pay, compensatory damages, punitive damages, costs, attorneys' fees, etc.

**THIRD CLAIM FOR RELIEF**
**Gender Discrimination (Sexual Harassment) in Violation of Title VII**
**of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.***

56. Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

57. As a female, Ms. McArthur is a member of a protected class.

58. Ms. McArthur satisfactorily performed her job as a Night Selector. She received two (2) performance-bonuses in the year she was employed by Defendant and was asked to train new team members.

59. After she complained to Defendant's management and officers about the sexual harassment she endured, Ms. McArthur was demoted. She was first put on administrative leave while Defendant purportedly "investigated" her allegations. When she returned to work, she was reassigned to work as a Dock Worker, which eliminated her ability to earn performance-based bonuses because only Selectors could earn such bonuses. Ms. McArthur was still forced to work with her coworker harassers during her shifts, Defendant took no action to stop the sexual harassment by demoting her, as Ms. McArthur stilled worked the same shift as the harassing-coworkers and had to interact with them as part of her job as a Dock Worker.

60. In addition, Defendant's management and senior officials perpetuated the discrimination and sexual harassment by, including but not limited to:

e) forcing Ms. McArthur to continuously meet with her harassing coworkers;

f) Defendant's vice president instructing Ms. McArthur to "stop the middle school drama" because "I need him as a selector;"

g) Defendant's Human Resource Manager suggesting to Ms. McArthur that Jarmontay may have been referring to a gang when he called her "Bloody;" and

h) Defendant's vice president instructing Ms. McArthur to "watch what you say to the other team members" so as not to instigate their "joking."

61. From around August 2019 through September 2019, Defendant engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1). Specifically, Defendant subjected Ms. McArthur to discrimination and sexual harassment because she was a female. The harassment was perpetuated by Defendant's management and company officers who had actual knowledge of the discrimination and harassment yet refused to take any action to stop it.

62. The effect of the practices complained of above has been to deprive Ms. McArthur of equal employment because of her gender.

63. The unlawful employment discrimination complained of hereinabove was intentional because Defendant acted maliciously and with reckless indifference to Ms. McArthur's federally protected rights by refusing to take any remedial action to stop the harassment. Further, Defendant discriminated against her based on gender by forcing Ms. McArthur to continue to work with the harassing coworkers, telling Ms. McArthur to "stop the drama" because they needed the "needed" the male harasser as a selector, and suggesting that she censor herself so as not to provoke ridicule from her harassing male coworkers. Defendant valued the male selectors over Ms. McArthur's federally protected right to be free from gender discrimination.

64. As a direct and proximate result of Defendant's violations of Title VII as described herein, Ms. McArthur has suffered and continues to suffer damages, including emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

65. As a result of all of Defendant's acts and omissions as set forth herein, Defendant is liable to Ms. McArthur for all damages and remedies available under the law to her including, but not limited to, front pay, back pay, compensatory damages, punitive damages, costs, attorneys' fees, etc.

**FOURTH CLAIM FOR RELIEF**
**Retaliation in Violation of Title VII**
**of the Civil Rights Act of 1964, 42 U.S.C. § 2000e** *et seq.*

66. Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

67. Ms. McArthur complained about the harassment she endured, as described herein, to Defendant's management and officers, including her supervisor, human resources, and Defendant's president and vice-president on multiple occasions. Ms. McArthur's internal complaints of sexual harassment and discrimination constitute protected activities under federal law.

68. Defendant took materially adverse actions against Ms. McArthur by demoting her to a Dock Worker position within days after she initially complained to Ms. Matthis and Defendant's vice president about the harassment. As a Dock Worker, Ms. McArthur had the same base salary, but no longer had the opportunity to earn performance-based bonuses and she was still forced to work and interact with the harassing coworkers during her shift.

69. Further, Defendant's management and officers suggested that Ms. McArthur was the source of any problem between her and her coworker harassers. Defendant's Vice President

14

instructed Ms. McArthur to "stop the middle school drama" because "I need [Jarmontay] as a selector." Defendant's Human Resource Manager indicated to Ms. McArthur that Jarmontay may have been referring to a gang when he called her "Bloody," and Defendant's Vice President instructed Ms. McArthur to "watch what you say to the other team members" so as not to instigate their "joking."

70. Given that Defendant did nothing in response to Ms. McArthur's repeated complaints other than force her to meet with her coworker harassers faced-to-face and demote her to a position in which she still worked with her harassers, a reasonable person in Ms. McArthur's position could conclude that she had no choice but to resign.

71. As a result of all of Defendant's acts and omissions as set forth herein, Ms. McArthur's resignation resulted in a constructive discharge by Defendant, which constitutes a materially adverse action pursuant to federal law.

72. A causal connection exists between Ms. McArthur's demotion and her complaints of sexual harassment because 1) Ms. McArthur's demotion occurred approximately one (1) week after she complained about the harassment to Defendant's Human Resources Manager and Defendant's Vice President, and 2) after Ms. Matthis purportedly investigated Ms. McArthur's complaints, the only option presented to Ms. McArthur was to return to work as a Dock Worker.

73. Further, a causal connection exists between Ms. McArthur's constructive discharge and her continuous complaints of sexual harassment because Defendant refused to any action in response to her repeated complaints. Further, Defendant's management and officers participated in and perpetuated the discrimination, harassment and intolerable working conditions by telling Ms. McArthur that Defendant needed her coworker harasser as a selector, demoting her from

15

Case 5:20-cv-00645-D   Document 1   Filed 11/30/20   Page 15 of 17

Selector to Dock Worker and instructing her to watch what she said at work so as not to provoke ridicule from her male harassers.

74. Defendant retaliated against Ms. McArthur because she complained about the sexual harassment she endured in the workplace.

75. As a direct and proximate result of Defendant's violations of Title VII as described herein, Ms. McArthur has suffered and continues to suffer damages, including emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

76. As a further direct and proximate result of Defendant's violations of Title VII as described herein, Ms. McArthur is entitled to recover all damages and remedies available under the law to her including, but not limited to, front pay, back pay, compensatory damages, punitive damages, costs, attorneys' fees, etc.

## JURY DEMAND

Plaintiff demands a trial by jury of the claim asserted in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays the Court for judgement against Defendant to the full extent permitted by 29 U.S.C. § 794a(a)(1), 42 U.S.C. § 2000e-5(f)-(k) and 42 U.S.C. § 1981a, including but not limited to, the following:

1. Judgment in Plaintiff's favor, determining that Defendant's actions and conduct relating to Plaintiff violated the Title VII of the Civil Rights Act of 1964.

2. Award Plaintiff back pay of all monetary damages incurred, including but not limited to front pay, back pay, interest, and benefits.

3. Award Plaintiff damages for mental anguish, emotional distress, pain and suffering, and other non-pecuniary damages.

4. Award Plaintiff punitive damages as a result of the intentional unlawful actions and conduct of Defendant under the Civil Rights Act of 1964 in an amount to be determined at trial.

5. Award Plaintiff the costs, disbursements, expenses, reasonable attorneys' fees and expert witness fees incurred by Plaintiff in filing and prosecuting this action pursuant to 42 U.S.C. § 1981a and as may be authorized by any other applicable federal laws;

6. For an award of pre- and post-judgment interest to Plaintiff on all damages; and

7. For all other, further relief as this Court deems just and appropriate.

This the 30th day of November, 2020.

Respectfully submitted,

_/s/ Lindsey A. Bullard___
Lindsey A. Bullard, N.C. Bar No. 46664
Dawn T. Mistretta, N.C. Bar No. 31691
STRAUCH GREEN & MISTRETTA, P.C.
1752 Heritage Center Drive, Suite 101
Wake Forest, NC 27587
Telephone: (919) 278-7453
Facsimile: (855) 876-8893
dmistretta@sgandm.com
lbullard@sgandm.com
*Counsel for Plaintiff*